# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 18 B 19918 |
| JULIO A. MONTENEGRO, SR., ) | |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| ) | |
| RUBEN FRANCHINI, ) | |
| ) | Adv. No. 18 A 845 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Judge Pamela S. Hollis |
| JULIO A. MONTENEGRO, SR., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter comes before the court following trial on Plaintiff Ruben Franchini's complaint against Debtor/Defendant Julio A. Montenegro, Sr. In the complaint, Franchini seeks to except his claim against Montenegro from discharge pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6).[1] Having heard the testimony of witnesses and reviewed the exhibits, the court finds in favor of Franchini. Montenegro's debt to Franchini, in an amount determined by the state court to be $38,000 plus punitive damages if appropriate, is excepted from discharge under § 523(a)(6).

---

[1] Plaintiff acknowledged in his opening statement that the focus of the trial was the claim for relief under § 523(a)(6). Tr. at 6-7. "I think 523(a)(4) is a little overkill on my part. . . . I think 523(a)(6) is really dispositive." Tr. at 7, lines 10-11 and 15-16.

## FINDINGS OF FACT

In 2009, Ruben Franchini acquired a unique wooden "chopper" motorcycle. Ex. L. As Franchini described it, "[t]his motorcycle was hand-carved, all the bike was wood. It was no metal. All carved in wood." Tr. at 39, line 25 – p. 40, line 1. Franchini stored the motorcycle at a Laundromat owned by Julio Montenegro. Ex. L.

In November 2017, Montenegro filed a complaint in Will County Circuit Court alleging that he owned the motorcycle and Franchini would not allow him to take it, and seeking its immediate return. Ex. G. Franchini filed counterclaims sounding in conversion and intentional damage to property. Ex. H.

At the time Montenegro and Franchini filed their claims, the motorcycle was being stored at Max Muffler's. Tr. at 12, 50. Franchini had an objection to the motorcycle's storage at that location. Tr. at 14.

On November 27, 2017, the Will County court entered the following order:

This matter coming before the court on the TRO issued November 16, 2017 and Defendant's motion to strike and dismiss, the Court being fully advised in the premises, it is hereby ordered

1. The wooden motorcycle that is at issue, is ordered to be stored by the parties in a temperature controlled rental storage facility. The parties are ordered to pay for the costs of the rental 50/50. Keys to the rental space are ordered to be held by the attorneys. Motorcycle to be delivered to storage in 7 days.

2. Neither party is to have access to the storage space without order of court. Both parties are ordered to not touch, move, possess or alter the wooden motorcycle until further order of court.

Exhibit J (in relevant part); Tr. at 14-15.

Both Montenegro and his attorney were in court the day this order was entered. Tr. at 16, 50.

2

Shortly after entry of the order, Franchini's attorney John Schrock saw a photo of Montenegro and the motorcycle, posted on Facebook. Tr. at 20. Montenegro admitted at trial that after the November 27 court hearing he went to Max Muffler's where the employees helped him load the motorcycle. Montenegro brought the motorcycle to his garage, snapped a photograph and "said, basically, this – she's all mine now." Tr. at 50, lines 24-25; pp. 51-53. When asked on direct examination why he moved the motorcycle, Montenegro testified that he did so because Franchini objected to its location at Max Muffler's. Tr. at 70. "[M]y garage is actually concrete heated floors. It's radiant heat, so it's a nicer environment for wood." Tr. at 72, lines 15-17.

Just three days after the November 27 hearing, Montenegro called the Joliet Police Department to report that a break-in occurred at his garage between 3:45 and 7:30 that day. Ex. F. According to the report, the motorcycle had been "destroyed/damaged/vandalized." Id.

A few days after the police report was filed, Schrock received photos from Montenegro's attorney, showing the motorcycle in pieces on the floor of Montenegro's garage. Tr. at 21; Ex. B. Montenegro's attorney told Schrock "that the wooden chopper was destroyed at his client's garage." Tr. at 22, lines 1-2. The Will County court later found that the motorcycle "was mysteriously destroyed" while in the garage. Ex. L.

Schrock then filed a motion seeking permission to inspect the damage. The Will County court held a hearing and determined that both Franchini and his attorney Schrock could attend an inspection on December 9, 2017. On that date, Franchini and Schrock saw the motorcycle in approximately the same condition as in the photographs taken a week earlier. Tr. at 22; Ex. B.

3

Franchini learned that Montenegro was making an insurance claim based on the destruction of the motorcycle.[2] Franchini asked Schrock to prepare and file a motion to escrow any insurance proceeds. Tr. at 23. Schrock filed the motion on January 19, 2018.

Meanwhile, Montenegro's insurance company, Country Financial, sent him a payment of $37,000 on December 27, 2017. Tr. at 55; Ex. D. This payment represented the $38,000 value of the motorcycle, less a $1,000 deductible. Ex. D.

At the hearing on Franchini's motion to escrow the insurance proceeds, held on January 24, 2018 at 9:00 a.m., Montenegro "state[d] on the record to Judge Anderson that the [insurance] money was all spent." Tr. at 26, lines 7-8. Based on that representation, Schrock withdrew the motion to escrow – but he also issued a subpoena to Bank of America.

The records Schrock eventually received from Bank of America revealed that on the same day Montenegro stated in court that he had spent all of the insurance proceeds, he withdrew $20,000 from his account. Tr. at 26; Ex. E.

Montenegro testified at trial that although he did not know the purpose of the January 24 hearing, before the 9:00 court call he went to his Bank of America branch, obtained a certified check for $20,000, and gave it to his mother in the bank parking lot. Tr. at 58-62.

In Will County, however, Montenegro testified that instead of meeting his mother in the bank parking lot, he "stopped at my relatives, dropped the check off so it could be taken on the flight for my investment." Tr. at 86, lines 2-4. Montenegro admitted to this court that his memory is "a lot more foggy" now than it was when he testified in Will County court. Tr. at 86, line 14.

---

[2] At trial, Montenegro stipulated that he "had a homeowner's insurance policy; that he filed a claim arising from the loss of the motorcycle; that he was paid on the claim." Tr. at 25, lines 6-9.

4

Montenegro also testified at a deposition that he withdrew the $20,000 for a home in Mexico and to pay off a loan on a Harley Davidson motorcycle. Tr. at 27. The Bank of America records show a payment of $8,468.81 for the motorcycle loan on the day after the hearing, January 25. Ex. E. Montenegro testified that the loan payment was made at least seven to ten business days prior to the 25th. Tr. at 62-63, 77.

The Will County court eventually held a trial on Franchini's complaint. Judge John C. Anderson issued an order on June 12, 2018, entering judgment in favor of Franchini in the amount of $38,000 on his counterclaims for conversion and intentional damage to property. Ex. L. Among other findings, Judge Anderson stated that the motorcycle was "mysteriously destroyed" while in Montenegro's garage, and that Montenegro's representations that he had spent the insurance proceeds prior to the court hearing on January 24 "were false and misleading." Ex. L.

Judge Anderson also stated in the order that punitive damages were appropriate, but that he would need to take evidence on Montenegro's ability to pay. Montenegro filed for relief under Chapter 7 on July 17, 2018, before the question of his ability to pay punitive damages could be resolved.

Shortly before the bankruptcy filing, Judge Anderson ordered Montenegro to turn over possession of the "damaged wooden chopper." Ex. M. It appeared to Franchini that, based on the photos he had seen, he could put the motorcycle back together "because the bike mean a lot to me, and my customers." Tr. at 38, lines 9-10. The turnover was ordered to take place at a neutral location, and there was a presence from the Will County Sheriff's Office. Tr. at 80.

Montenegro turned over the motorcycle, but its condition was far different from what Franchini had seen in the November 2017 photos. As Franchini described it at trial, "[y]ou can

5

tell on the handlebars, the frame, the tires, the engine, everything was destroyed into more small pieces." Tr. at 39, lines 20-22. Additionally, "[t]he whole tire [which was also made of wood] was more broken to pieces where it was damaged," and where the front tire and the frame had been one piece, it was now "all broken in small pieces." Tr. at 42, lines 11-12 - page 43, line 1.

Montenegro denied damaging the motorcycle between November and June and disputed the extent of the damage. Tr. at 81-83. He agreed, however, that the motorcycle had "a lot more damage" in June than in November. Tr. at 66, line 11.

## CONCLUSIONS OF LAW

Franchini bears the burden of proof in this proceeding. He must demonstrate by a preponderance of the evidence that the $38,000 debt Montenegro owes to him should be excluded from discharge pursuant to 11 U.S.C. § 523(a)(6). Grogan v. Garner, 498 U.S. 279, 286-87 (1991).

According to § 523(a)(6):

**(a)** A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

**(6)** for willful and malicious injury by the debtor to another entity **or to the property of another entity**.

11 U.S.C. § 523(a)(6) (West 2019) (emphasis added). Exceptions to discharge are construed narrowly in favor of the debtor. In re Chambers, 348 F. 3rd 650, 654 (7th Cir. 2003).

The Supreme Court tells us that "only acts done with the actual intent to cause injury" come within the scope of § 523(a)(6). Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). Following Geiger, the Seventh Circuit later clarified that the element of willfulness can be found either if the debtor's motive was to inflict the injury, or the debtor knew injury was substantially certain to result from his act. Jendusa-Nicolai v. Larsen, 677 F. 3rd 320, 324 (7th Cir. 2012). As for the second element, our Circuit determined 25 years ago that maliciousness requires a finding that

6

the debtor acted "in conscious disregard of [his] duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." Matter of Thirtyacre, 36 F. 3rd 697, 700 (7th Cir. 1994) (citation omitted). See also In re Horsfall, 738 F. 3rd 767, 774-75 (7th Cir. 2013) ("we reaffirm today that our definition of maliciousness from Thirtyacre remains good law").

Franchini proved by a preponderance of the evidence that he suffered an injury to his property. In November 2017, the Will County court ordered the motorcycle to be transferred to a temperature-controlled rental storage facility, for which the parties would share the costs. Instead, Montenegro took the motorcycle back to his own garage where it was "mysteriously destroyed." Franchini thought the motorcycle was salvageable, so he proceeded with his state court case. When the motorcycle was eventually turned over to him seven months later, it was far more damaged. Instead of receiving a unique, hand-carved, all-wood chopper, Franchini received a box of pieces.

The question, therefore, is whether Montenegro inflicted this injury willfully and maliciously. Having heard Montenegro testify, and having observed his demeanor, the court finds that Montenegro is not a credible witness. For example, he testified that he did not know the purpose of the court hearing on January 24 at which Franchini was seeking escrow of the proceeds from his insurance claim. Yet Montenegro managed to arrive at his bank early enough that morning to obtain a certified check for $20,000 and to give that check to his mother – all before court began at 9:00 a.m. Alternatively – and still before court began at 9:00 a.m. – Montenegro obtained the check and dropped it off at a relative's house rather than meeting his mother in the bank parking lot. This slightly different story, also recited under penalty of perjury, is just as implausible. The Will County judge also found some of Montenegro's representations to be "false and misleading."

7

Therefore, despite the report he made to the police, the court finds not credible Montenegro's explanation that there was a break-in at his garage just days after he brought the motorcycle home, and that the chopper was destroyed by an unknown burglar. This explanation is especially suspect because except for the garage door, the police report contains no description of property missing or destroyed other than the motorcycle. Rather than a random criminal who broke into a garage and touched nothing except a wooden motorcycle, it is much more believable that Montenegro inflicted the damage to the chopper himself. Taking Montenegro's credibility into account, the court finds that Franchini proved by a preponderance of the evidence that Montenegro acted willfully – that is, he brought the motorcycle to his garage with the intent to inflict injury on Franchini's property, and that he did inflict that injury.

As to the second element, Franchini proved by a preponderance of the evidence that Montenegro acted maliciously. Maliciousness requires a finding that Montenegro acted "in conscious disregard of [his] duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." The evidence shows that shortly after Montenegro heard Judge Anderson order that the motorcycle must be stored in a rental facility, and that neither himself nor Franchini would be allowed to touch, move, possess or alter it, he took the motorcycle from the place it was being held and brought it to his own garage. His excuse that the garage has heated floors, which are good for storing wood, is flimsy in the face of a court order specifically requiring the motorcycle to kept in a neutral location and forbidding the parties to move it. Montenegro's violation of the court order clearly satisfies Franchini's burden of proving that Montenegro acted in conscious disregard of his duties and without just cause.

## CONCLUSION

Having concluded that Franchini suffered an injury, and that Franchini proved by a preponderance of the evidence that Montenegro caused that injury willfully and maliciously, the court finds Montenegro's debt to Franchini in the amount of $38,000, plus punitive damages if appropriate, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Date: ___DEC 1 9 2019___                   _____
                                            PAMELA S. HOLLIS
                                            United States Bankruptcy Judge